Ronnie Dwayne Flagg was found guilty by a jury in the Montgomery County Court of Common Pleas of kidnapping, abduction, and attempted rape and was sentenced accordingly. Prior to sentencing, Flagg filed a motion for a new trial, which the trial court denied following a hearing. Flagg now appeals from his conviction and from the denial of his motion for a new trial.
On January 15, 1998, Flagg was indicted on one count each of felonious assault, kidnapping with a sexual motivation specification, abduction, attempted rape, and rape. Flagg pleaded not guilty to the charges. He filed a motion for a bill of particulars, which the trial court granted and the state supplied. A jury trial commenced on May 4, 1998.
The evidence presented by the state established the following.
Katina Hill testified that she had met Flagg at a bar in Dayton, Ohio and had given him her pager number and that he had contacted her a few weeks later suggesting that they go out on a date. On December 26, 1997, Flagg picked Hill up, and they drove to Cincinnati. They went to a few nightclubs, and shortly before closing time, they decided to leave. As they were traveling home on Interstate 75, Flagg informed Hill that he wanted to stop at a motel to get a few hours of sleep. Hill told him that she wanted to go home and offered to drive, but Flagg refused. Flagg then touched Hill on the leg and placed her hand on his exposed penis. After Hill had stopped touching him, Flagg drove onto an exit ramp and stopped at a hotel in Cincinnati. In the hotel lobby, Hill told Flagg that she would not go into a room with him, and he decided to take her home.
Once inside the car, Flagg and Hill started to argue. Flagg drove the car along a road near the hotel, stopped in a parking lot near a dumpster, and started grabbing at Hill's clothes and her neck. Trying to escape, Hill kicked at him and unlocked the door. She fell out of the car and started running, and Flagg caught up to her and hit her in the face. They started fighting, and Flagg punched Hill in the face, causing her to fall to the ground. Although Hill could not remember much of what had happened next, she did remember yelling at Flagg, hearing him tell her "to shut up or he would give [her] something to cry about," and being put back into the car against her will.
When they were back on the highway, Hill asked Flagg if he was going to kill her and told him to stop the car. When Flagg increased the car's speed, Hill opened the door and jumped out of the car. She testified that the next thing she remembered was lying on the back seat of the moving car and asking Flagg why he was doing this to her. She testified that she was then tired, sore, and wearing only her bloody shirt and that she had lost the rest of her clothes although she could not remember where or how. Flagg drove to a motel in Kettering, pulled Hill out of the car, and escorted her to a room. Hill fell asleep on the bed and woke up when Flagg came back into the room and told her to clean up in the bathroom. Hill took a bath, wrapped herself in a blanket, and fell asleep on the bed. When she awoke, Flagg was beside her on the bed, and he got on top of her and tried to have sex with her. Hill screamed and tried to get away from Flagg, and he covered her mouth, told her to be quiet, and hit her several times. She then grabbed his scrotum and squeezed until she drew blood. Flagg then got dressed and left the room. Hill dialed 911, and a firefighter-paramedic and a police officer arrived at the motel room. She was taken to the hospital by ambulance. Detectives collected evidence from the motel room, the parking lot outside the motel room, and Flagg's car. Photographs of the scene, items of clothing that Hill had worn on the night in question, blood samples taken from the motel room walls, and towels from the motel room were introduced as evidence.
At the close of the state's evidence, Flagg made a Crim.R. 29 motion on several grounds, and the trial court dismissed the felonious assault charge.
Flagg testified on his own behalf. He stated that, on the drive to Cincinnati, he and Hill had agreed to spend the night in Cincinnati so that he would not have to drive home late at night, but that, when they were in the lobby of the motel in Cincinnati, Hill had insisted on going home. Flagg testified that, after they had left the motel in Cincinnati, he had immediately driven back onto Interstate 75, they had started to argue and fight, and Hill had jumped out of the car. He denied everything that Hill had stated about him attacking her in a parking lot near a dumpster. Flagg also denied having attempted to have sex with Hill when they were at the motel in Kettering.
On May 28, 1998, the jury found Flagg guilty of kidnapping with a sexual motivation, abduction, and attempted rape and found him not guilty of rape. On June 5, 1998, Flagg filed a motion for a new trial. The trial court conducted a hearing on Flagg's motion on July 17, 1998 and denied the motion. Flagg was sentenced to concurrent sentences of two years imprisonment for attempted rape, three years for kidnapping, and one year for abduction. The trial court also found that Flagg was a sexually oriented offender and ordered him to comply with the statutory registration requirements. On appeal, Flagg raises two assignments of error.
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A NEW TRIAL ON THE GROUNDS OF JUROR MISCONDUCT.
Flagg contends that the trial court erred in overruling his motion for a new trial brought pursuant to Crim.R. 33(A)(2).
Pursuant to Crim.R. 33(A)(2), a new trial may be granted upon motion by the defendant if his substantial rights were materially affected by misconduct of the jury. The trial court's ruling on such a motion will not be disturbed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, 76.
In proceedings challenging the validity of a verdict, jurors are incompetent to testify "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith." Evid.R. 606(B). According to the rule on evidence aliunde, although jurors may testify on "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror," such testimony must be preceded by "some outside evidence of that act or event." Id. The supreme court inSchiebel explained the rule on evidence aliunde as follows:
 In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, and the information must be from a source which possesses firsthand knowledge of the improper conduct. One juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first. Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidence aliunde. (Citations omitted.)
Schiebel, 55 Ohio St.3d at 76. A juror's affidavit or other evidence of his statements regarding matters on which he would be precluded from testifying will not be received for these purposes. Evid.R. 606(B).
In his motion for a new trial, Flagg alleged that juror Jacqueline Dixon had telephoned his defense counsel on the morning after the reading of the verdict to inform him that the jury foreman, Joseph Koch, had conducted his own investigation into the alleged offenses while the jurors had been excused from deliberations for the Memorial Day weekend. Dixon stated the following in an affidavit attached to Flagg's motion:
 Upon return [from the holiday weekend on] May 26, 1998, our foreman, Mr. Joseph Koch explained his version of the events in question. He told us that he had conducted an investigation of his own. He had driven the path which [Flagg] had allegedly traveled to and from Cincinnati the night in question. He stated that he had looked for the motel in the Cincinnati area in question. He stated that he believed he had located it in the downtown area and it was the "Holiday Inn." He further stated that he believed he had also found the path traveled to the alleged "blue dumpster" where Ms. Hill, the complainant, alleges her kidnapping to have begun. He stated that he believed these findings confirmed his version of the events and gave credibility to Ms. Hill. He described how the kidnapping (and abduction) took place in light of these findings. Mr. Koch stated that he strongly believed the Defendant to be "guilty."
Dixon further stated that, in a poll taken prior to the weekend break, she and six other jurors had voted "not guilty" and five had voted "guilty" whereas, following Koch's report of his investigation, only she and one other juror had voted "not guilty." She explained that, during the next two days of deliberations, "the other jurors verbally beat on [her]" until she was finally "verbally pressured and abused" into voting "guilty." Flagg also submitted an affidavit from his defense counsel stating that the trial court had instructed jurors not to independently investigate the facts and that he had not "solicited, counseled nor induced" Dixon into making the statements contained in her affidavit.
The state filed a memorandum opposing Flagg's motion for a new trial. The trial court conducted a hearing on Flagg's motion on July 17, 1998. Mary Colleen Wilmes, an employee of Flagg's defense counsel, testified that she had received the telephone call from Dixon. The state objected when Flagg inquired into what Dixon had told Wilmes, and the trial court sustained the objection because in the absence of extraneous, independent evidence supporting the alleged juror misconduct, Wilmes was incompetent to testify to Dixon's hearsay statements. The trial court excused Wilmes and allowed Flagg to proffer her testimony. Flagg attempted to call Koch and Dixon as witnesses; however, the trial court refused to permit them to testify for the same reason. Flagg proffered that Koch would be questioned about his investigation and about "any independent other individuals with whom he may have dealt" because "there is a reasonable possibility that he either took someone with him or talked with someone while he was doing this independent investigation." The trial court also denied Flagg's request to call Koch for the limited purpose of inquiring whether any other individuals had been aware of his investigation.
On July 28, 1998, the trial court rendered its decision, order, and entry overruling Flagg's motion for a new trial. The trial court stated that "the only evidence of juror misconduct is derived sole[l]y from a juror's affidavit which was internal to the jury's deliberations" and although "this information may have raised an issue, it was not supported by extrinsic, independent evidence from an outside source possessing firsthand knowledge of the alleged improper conduct." The trial court found that Wilmes's proffered testimony was not extrinsic, independent evidence because "she would only have been testifying as to what she had been told by Dixon."
We agree with the trial court's determination that Flagg did not present any evidence aliunde of juror misconduct so as to permit testimony from Wilmes, Dixon, and Koch on whether extraneous prejudicial information had been brought to the jury's attention. See Evid.R. 606(B). The trial court acted in accordance with Evid.R. 606(B) in prohibiting Wilmes, Dixon, and Koch from testifying on Koch's investigation and its impact on the jury. Furthermore, it is entirely speculative that, if questioned, Koch would have revealed an independent witness with firsthand knowledge of his investigation. Thus, we find no error on this record in the overruling of Flagg's motion for a new trial.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN ENTERING CONVICTIONS OF KIDNAPPING AND ABDUCTION ON THE BASIS OF A SINGLE COURSE OF CONDUCT.
Flagg argues that he was unlawfully convicted of kidnapping and abduction because the convictions were based on the same course of conduct.
R.C. 2941.25 provides:
 A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In determining whether a defendant was convicted of two or more allied offenses of similar import, Ohio courts employ a two-prong test:
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
State v. Blankenship (1988), 38 Ohio St.3d 116, 117.
Flagg was convicted of kidnapping, in violation of R.C.2905.01(A)(4), which prohibits a person from using force, threat, or deception to "remove another from the place where the other person is found or restrain the liberty of the other person" for the purpose of engaging in sexual activity with the victim against the victim's will. He was also convicted of abduction, in violation of R.C. 2905.02(A)(2), which prohibits a person from knowingly using force or threat to "restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear." Comparing the elements of the offenses charged in the indictment, we do not believe that the commission of kidnapping necessarily results in the commission of abduction. Kidnapping under R.C.2905.01(A)(4) includes the element of acting with a purpose to engage in sexual activity with the victim against the victim's will whereas abduction under R.C. 2905.02(A)(2) does not include this element, and abduction can be committed either by restraining the victim's liberty under circumstances creating a risk of physical harm or by placing the victim in fear whereas neither the risk of physical harm nor a situation causing fear are elements of kidnapping.
Furthermore, our review of Flagg's conduct indicates that the kidnapping and the abduction offenses were committed separately. In the bill of particulars, the state specified that Flagg had kidnapped Hill by removing her from the ground next to the blue dumpster or had restrained her of her liberty for the purpose of sexual activity. The state further specified that the abduction charge was based on Flagg's conduct in removing Hill from the ground near the blue dumpster and placing her into his automobile. According to the state's appellate brief, the kidnapping offense began when Flagg caught up to Hill, who had run from the car, and knocked her to the ground and was complete when Flagg finally ceased his attempt to have sex with her. The abduction offense began immediately after Flagg had given up his attempt to have sex with Hill and continued while he grabbed her and forced her into the front seat of the car, causing her to fear for her safety by increasing his driving speed upon her request that he stop the car. In our judgment, Hill's testimony supports the jury's findings that Flagg had kidnapped her, with the intent to have sex with her, and then had abducted her. Based on her testimony of the events occurring near the blue dumpster, Flagg was not unlawfully convicted of allied offenses of similar import because the kidnapping and abduction offenses were committed in temporal sequence and thus, they were separate offenses for which Flagg could be convicted pursuant to R.C. 2941.25(B). The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Kirsten A. Davies
Victor A. Hodge
Hon. David Gowdown
In the Court of Appeals for Montgomery County, Ohio.